IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIGUEL AMADOR GONZALEZ, INDIVIDUALLY AND A/N/F OF K.M., MINOR | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| vs. | § § § | JURY DEMANDED |
| HARRIS COUNTY; HARRIS COUNTY CONSTABLE'S OFFICE, PRECINCT 4; NATHANIEL DILLARD individually, and in his official capacity; MENDELLA MARTIN CARTER individually, and in his official capacity; AND VICENTE MEDINA individually and in his official capacity | § § § § § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Plaintiffs, MIGUEL AMADOR GONZALEZ, Individually and a/n/f of K.M, Minor, (hereinafter "Plaintiffs") and file this Original Complaint, and would respectfully show as follows:

I.

INTRODUCTION

On April 29, 2020, Miguel Amador Gonzalez was enjoying an afternoon with his family at his home, in his backyard pool. Children were swimming in the pool and music was playing in the background. His next-door neighbor, Spencer Alfredo, decided to call 911 to make a noise complaint regarding Miguel's music. The neighbor did not have a good relationship with Plaintiffs.

The neighbor had a history of obnoxiously pestering Miguel and his family, and that day was no exception. As a result of the noise complaint, Harris County Constable's Office Precinct 4 was dispatched to Miguel's house to investigate the alleged noise complaint. Officer Dillard responded to the call.

Officer Dillard arrived at Miguel's home to notify Plaintiffs about their neighbor's noise complaint and was quickly met with a language barrier. Miguel is of Cuban nationality whose dominant language is Spanish. To the best of his abilities, Officer Dillard communicated the noise complaint to Miguel to which he complied with by turning the music down. Mr. Alfredo was not satisfied and made yet another 911 call to complain about Miguel's music a few minutes later after the police officer had left.

The second time the police knocked on Miguel's front door, he was visibly annoyed, aggressive, and impatient with Miguel. Before approaching Miguel's door, Officer Dillard expressed great frustration and anger toward Miguel, expressing a desire not to come back. Officer Dillard was determined to issue Miguel a citation for disorderly conduct, despite Miguel having turned his music down. This time, Officer Dillard brought with him two other officers, including Officer Singh, a Spanish-speaking officer, to help translate. Officer Singh translated between Officer Dillard and Miguel to the best of her abilities.

Officer Dillard issued a citation for disorderly conduct against Miguel—namely, a Class C misdemeanor under Section 42.01 of the Texas Penal Code. Officer Dillard then began insisting that Miguel sign the citation with a promise to appear in court at a later date. Miguel, unsure of exactly what noise violation they were accusing him of disobeying, refused to sign until he received clarification on the matter. Officer Dillard then began telling Miguel that if he did not sign the notice to appear, he would be taken to speak to a judge. The back and forth between

Officer Dillard and Miguel ensued while Officer Singh poorly translated between the two. An argument ensued. Miguel never stepped out of his house and at all relevant times spoke to the police from inside the front-door threshold, with the door open.

As she could see he was confused, Officer Singh attempted to explain and translate that Miguel would be taken to speak to a judge about the citation if he did not sign it. Miguel then told officer Singh that he had to go change clothes because he could not speak to the judge all wet, from his bathing suit. Officer Singh attempted to communicate this with Officer Dillard and Officer Dillard ignored the translation of the conversation. That is when Officer Dillard escalated the situation and began using profane language to yell at Miguel, ignoring what Miguel was saying in response, and ignoring any further translation from Officer Singh. Miguel asserted his Constitutional right and informed the officers, in Spanish, that they could not enter his home. Officer Dillard took this as a challenge to his authority from Miguel and suddenly entered into the home. He ran towards Miguel and tackled him to the ground violently.

Officer Dillard charged at Miguel with such force that he pushed him down on the entry hallway, hitting a glass table on the opposite side of the room and breaking it. Miguel injured his head and knee. K.M., along with other family members, was in the living room/kitchen area when Officer Dillard tackled Miguel to the ground. The minor was pushed to the side by Officer Carter, who also illegally charged into the home, causing the child to also fall and hit her head on the floor and on a nearby chair. Miguel suffered a laceration to the head requiring medical stitches and a blow to the knee which resulted in torn ligaments and requiring surgery. Father and daughter were both diagnosed with mild traumatic brain injury. The mother of the child cut her feet with the broken glass, causing a bloody scene inside their home.

To justify his actions, Officer Dillard then asserted and accused Miguel of evading arrest and arrested him. The Harris County District Attorney eventually dismissed the Evading Arrest after determining that he was arrested with no probable cause, confirming that Officer Dillard's arrest was made in bad faith.

The actions of Officer Dillard that day were unconstitutional, abusive, and reckless. Officer Dillard clearly abused his authority in escalating what was a simple noise complaint in a residential neighborhood, to a violent encounter that has permanently affected the lives of Miguel and his daughter.

II.

PARTIES

1. Plaintiff, Miguel Amador-Gonzalez, lives in Harris County, Texas, which is a part of the Southern District of Texas (hereinafter, "Miguel").

2. Plaintiff, K.M., is a minor, and the daughter of Miguel Amador-Gonzalez, who lives with her father and mother in Houston, Texas, Harris County, Texas.

3. Defendant, HARRIS COUNTY, is a Texas governmental unit that operates the division known as the Harris County Constable's Office Precinct 4 (hereinafter, "Pct. 4"), which in turn sets a county-wide policy for officers employed by the Constable's Office.

4. Defendant, HARRIS COUNTY CONSTABLE'S OFFICE PRECINCT 4, is a governmental unit of the States of Texas and is the employer and principal of the DEFENDANT OFFICERS named herein.

5. Defendant, NATHANIEL DILLARD (hereinafter, "Officer Dillard"), is a Harris County Constable's Office Precinct 4 officer, who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Pct. 4 officer. He is sued in his individual

capacity and official capacity. Based on information and belief and subject to discovery in this case, Officer Dillard may have discriminated against Plaintiff Miguel, unlawfully entered Plaintiff's home, used excessive force to tackle Plaintiff Miguel, and/or falsely arrested Plaintiff Miguel, injuring both Plaintiffs in this case. He is currently working for Pct. 4, at 6831 Cypresswood Dr., Spring, Texas, 77379. He may be served there.

6.      Defendant, MENDELLA MARTIN CARTER, (hereinafter "Officer Carter"), is a Harris County Constable's Office Precinct 4 officer, who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Pct. 4 officer. He is sued in his individual capacity and official capacity. Based on information and belief and subject to discovery in this case, Officer Carter acted intentionally or recklessly against Plaintiffs, by unlawfully entering the home, used excessive force to push Plaintiff K.M. out of the way, injuring Plaintiff K.M. in this case. He is currently working for Pct. 4, at 6831 Cypresswood Dr., Spring, TX 77379. He may be served there.

7.      Defendant, VICENTE MEDINA ('hereinafter, "Lieutenant Medina"), is a Harris County Constable's Office Precinct 4 officer, who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Pct. 4 officer. He is sued in his individual capacity and official capacity. Based on information and belief and subject to discovery in this case, Lieutenant Medina may have failed to supervise Officer Dillard which caused the excessive force by Dillard, a false arrest, and discrimination against the Plaintiffs. He is currently working for Pct. 4, at 6831 Cypresswood Dr., Spring, Texas, 77379. He may be served there.

III.

JURISDICTION AND VENUE

8.       This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331, because the claims involve a question of federal law under 42 U.S.C. §1983 and the U.S. Constitution.

9.       The Plaintiffs also invoke the Court's supplemental jurisdiction, under 28 U.S.C. §1391(a)(2) because all or substantial part of the events which gave rise to these causes of action occurred in the Southern District of Texas.

IV.

FACTUAL ALLEGATIONS

10.      On April 29, 2020, in the afternoon, Miguel hosted a small get-together with family and friends at his home located at 19322 Camelia Bend Circle in Spring, Texas.

11.      Miguel was enjoying the company of his family by his backyard pool and listening to music on a Bluetooth speaker.

12.      On this same day, Miguel's next-door neighbor, Alfredo Spencer, called 911 to make a noise complaint.

13.      Pct. 4 officers were dispatched to address the 911 call, specifically, Officer Dillard responded to the call.

14.      Officer Dillard, along with Officer Carter arrived at Miguel's home and knocked on the front door.

15.      Miguel is a Spanish speaking individual and made this known to Officer Dillard when they first interacted.

16.      One of Miguel's guests aided in interpreting for him in order to communicate with Officer Dillard.

17. Miguel identified himself and indicated he was the resident of the home.

18. Officer Dillard advised him of the next-door neighbor's noise complaint and requested that the volume of the music in the backyard be turned down.

19. At all times during the interaction with the deputies, Miguel remained inside his home, speaking to the deputies with his front door open.

20. Miguel lowered the volume of the music as requested.

21. Miguel then called 911 to talk to a supervisor and report that Officer Dillard and Deputy Carter were at his house telling him to turn his music down, but he believed the officers were harassing him because his music was not loud and because Officer Dillard failed to explain exactly what law Miguel was allegedly violating.

22. The 911 dispatcher transferred him to Officer Dillard's supervisor to further discuss the visit he just received from the Pct. 4 officers.

23. He was transferred to speak with Lieutenant Medina of Pct. 4.

24. Lieutenant Medina then contacted Officer Dillard and discussed the complaints of Miguel and his not understanding of the issues.

25. Shortly after, Officer Dillard was dispatched to Miguel's home for a second noise complaint.

26. Officer Dillard expressed irritation to other officers toward Miguel and his family for having to return to the home and he was not happy he had to come back to address a second, immediate complaint from the same neighbor.

27. This second time, Officer Dillard was accompanied by Deputy Singh, a Spanish-speaking deputy, to interpret for him.

28. Despite Officer Dillard acknowledging that Miguel had already turned down the music, Officer Dillard generated a citation and issued the same for disorderly conduct.

29. Once again, Miguel communicated with the deputies from inside his home. Even though his front door was open, he always remained inside his home.

30. While issuing the citation, Miguel and Officer Dillard, through Deputy Singh, discussed the volume of the music and whether or not Miguel was in violation of a noise ordinance or law. Miguel denied he was doing anything wrong or illegal.

31. Deputy Singh explained that Miguel was going to be issued a citation for disorderly conduct, notwithstanding his defense or explanation.

32. Miguel indicated that he did not want to sign the citation because he did not believe he was in violation of any laws pertaining to the permissible volume of music and did not understand fully that by signing the citation he was not admitting fault.

33. Deputy Singh then explained that if he refused to sign the citation the only other alternative for Miguel was to be taken to speak to the Judge, in court.

34. Miguel reiterated he did not want to sign the citation because he believed he was not breaking any laws regarding permissible volume of music. An argument and confusion ensued.

35. Deputy Singh began to speak directly to Miguel, taking control of the conversation herself, and no longer translating for Officer Dillard.

36. Deputy Singh and Miguel went back and forth about signing the citation as Deputy Singh attempted to coax him to sign the citation. Officer Dillard began speaking directly to Miguel in English, cussing.

37. Miguel then stated he wanted to ask someone inside the house to help him understand his rights and what was happening.

38. When Deputy Singh interpreted Miguel's request to ask someone inside, Officer Dillard kept speaking in English to Miguel assuming he understood him.

39. Deputy Singh tried to not only translate but explain what Officer Dillard was saying, which appeared to aggravate Officer Dillard more.

40. Deputy Singh and Officer Dillard continued to explain to Miguel that if he did not sign the citation, he would have to go before a Judge.

41. Miguel eventually resigned himself to go with the officers and indicated he needed to go change clothes because he could not go before the Judge in wet clothes, from being in the pool.

42. Deputy Singh then translated this to Officer Dillard. Officer Dillard's demeanor changed abruptly, and his tone became more aggressive toward Miguel.

43. Officer Dillard told Deputy Singh that he was not going to wait for Miguel to change clothes. Officer Dillard did not wait to have the whole conversation translated and began to talk over Miguel, not listening to what he was saying, or even waiting for it to be translated by Deputy Singh.

44. Officer Dillard began to berate Miguel verbally with unprofessional language and stated, in English, he would not wait for him to change clothes.

45. Officer Dillard then gave Miguel an ultimatum: either he signed the citation, or he would be arrested.

46. Deputy Singh did not translate what Officer Dillard yelled at Miguel. She remained quiet.

47. Miguel then asserted his Constitutional rights by stating that the deputies do not have permission to enter his home.

48. When Deputy Singh translated this to Officer Dillard, based on information and belief, Officer Dillard escalated the situation.

49. Based on information and belief, Officer Dillard lost all professionalism and civility, taking Miguel's assertion of his Constitutional rights as a personal threat to Officer Dillard's authority.

50. Without waiting for Deputy Singh to translate, to ensure Miguel understood the conversation, he challenged Miguel's assertion that he is in his home and that officers cannot enter his home, and told him: "Put your hands behind your back"; and, based on information and belief, simultaneously ran towards Miguel, entering his home without consent or permission and tackled him to the ground violently.

51. Officer Dillard tackled Miguel inside the home, down the hallway, and into a glass table next to the wall opposite the front door.

52. When Officer Dillard pushed Miguel into the glass table, a decorative glass vase broke, shattering glass all over the floor.

53. During the struggle, Miguel was hit in the head with a metal object, believed to be Officer Dillard's handcuffs, and he felt a kick to the knee (with the officer's boots). The unwarranted attacked resulted in both a laceration of his head and swelling of his knee.

54. The injuries Miguel sustained as a result of this attack and position of his handcuffs upon arrest later required extensive medical treatment. Miguel had to have surgery on his knee. The blow to his head caused mild traumatic brain injury.

55. Family members were inside the home when the attack occurred.

56. Plaintiff K.M. was in the living room/kitchen area when the attack occurred, she was violently pushed out of the way by Officer Carter, causing her to fall to the floor and hit her head twice.

57. The injury sustained as a result of this attack will have long term effects for K.M. She was also diagnosed with a mild traumatic brain injury.

58. Miguel's wife was also injured on the broken glass as she ran to aid her husband as he was being attacked.

59. The wife's feet got cut with shattered glass on the floor, causing a bloody scene inside the home, which is confirmed by pictures.

60. Emergency Medical Services were called out to the scene as a result of Officer Dillard's attack of Miguel.

61. Miguel was arrested and charged for Evading Arrest and given a citation for Disorderly Conduct as well.

62. Miguel's charge for Evading Arrest was dismissed due to no probable cause existing at the time by the Harris County District Attorney.

63. Miguel's citation of Disorderly Conduct was also eventually dismissed by the local Justice of the Peace.

V.

FEDERAL CAUSES OF ACTION

**Count One – 42 U.S.C. § 1983**

**Excessive Force**

64. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

65. As described in the preceding paragraphs, the reckless acts and omissions of the named Defendants, especially the actions of Officer Dillard toward Plaintiff Amador violated his Constitutional rights, including but not limited to those under the Fourth Amendment of the United States Constitution.

66. There is the existence of official policies and customs which were fairly attributable to Officer Dillard, and that proximately caused the violation of Miguel's Constitutional rights. This

violation of these policies is evidenced by the fact that Pct. 4 routinely attempts to cover-up its unjustified use of excessive force and actively covered-up Officer Dillard's tackling and injuring Miguel and K.M., despite Miguel being no sort of threat to Officer Dillard and was not attempting to flee Officer Dillard or any other officer involved in the incident on April 29, 2020 (as he was inside his home).

67. By coercing Miguel, falsely citing him in retaliation to having to continuously visit the home, expressly intimidating him without the opportunity to have the conversation translated at various points, entering his home without permission, tackling him across the entirety of his home, knocking him onto the floor and into a glass table causing multiple lacerations and injuries, pushing K.M. to the side causing her to hit her head, causing the glass to break that Miguel's wife cut her feet on, without probable cause to arrest for evading arrest, and no immediate threat of safety from Miguel, Officer Dillard clearly acted unreasonably in response to a noise complaint and a minor citation of disorderly conduct. The Defendants have clearly embraced a policy of constitutional abuse and unjustifiable violence against the residents of the County.

68. Additionally, none of the Officers involved in this incident wore their department issued body cameras or failed to turn them on. The officers' failure to comply with protocol set in place to hold them accountable for their actions, shows the Defendants' departmentwide policy of police brutality.

69. By refusing to reprimand its officers following these incidents, and its proclivity to "turn a blind eye" to gross violations of Constitutional rights, Pct. 4 has created a policy of police brutality and excessive force. This practice is pervasive in Harris County. Innocent bystanders and third parties suffer as collateral to the effects of these violent, illegal, unconstitutional, and immoral violations.

70. The reckless violence against Miguel's child, caused her serious injury, was also a brutal violation of her own Constitutional rights.

71. This policy of brutality and disregard for the rights secured to citizens and non-citizens by the Fourth Amendment demonstrates objectively unreasonable excessive force. Officer Dillard and his supervisor, Lieutenant Medina, who allowed and condoned the harassment, unreasonable violence, and false arrest of Miguel, while all acting pursuant to and in conformity with Harris County and Pct. 4 policies. The excessive force used by Officer Dillard, condoned by his supervisor, and Harris County policy was the direct cause of Miguel's and K. M's physical injuries and deep emotional anguish and suffering, to this day.

72. Based on the information and belief, neither Officer Dillard nor other officers involved in the response to the noise complaint were reprimanded or dismissed from duty as a result of this incident.

73. The misconduct described in this count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others to be free from excessive force under the Fourth Amendment to the United States Constitution.

## Count Two – 42 U.S.C. § 1983

### False Arrest

74. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

75. As described in the Complaint, the Defendants' actions, especially the actions of Officer Dillard toward Miguel violated his constitutional rights, including but not limited to those under the Fourth Amendment of the United States Constitution.

76. Harris County and Pct. 4 have policies and procedures regarding issuing citations and making arrests. By unlawfully entering the home of and arresting Miguel, despite Miguel having

complied with the Officer's previous request to lower the volume, the volume of the music being within the legal requirements, the citation being of minor consequence, Miguel staying within the threshold of his home, Miguel asserting that the officers did not have his consent to enter his home, and no warrant to enter the home of Miguel, Officer Dillard and other officers illegally entered the home of Miguel with no probable cause harassing, injuring, and arresting Miguel under the guise of evasion of arrest.

77. No exigent circumstances existed to require any officers to enter the home or arrest Miguel without consent or probable cause, as Miguel was in his home and at no point posed any threat to the officers or a sentiment to evade the officers. In fact, Miguel indicated that he was willing to go with the officers after he changed out of his wet clothes and talked to someone about his rights in his home. By violently forcing himself into the home, tackling, and arresting Miguel without a warrant, Officer Dillard clearly disregarded the policies and unreasonably entered the home of Miguel and unreasonably arrested him.

78. By refusing to reprimand Officer Dillard and other officers involved following these incidents, and its proclivity to ignore clear failure of its officers to follow policy and procedure in making arrests, Harris County and Pct. 4 have created new policies to allow officers to not follow proper procedure and make unreasonable and unlawful arrests.

79. Based on information and belief, neither Officer Dillard nor other officers involved in the issuance of the citation were reprimanded or dismissed from duty as a result of this incident.

80. This misconduct described in this Count was objectively unreasonable and unjustified.

## Count Three – 42 U.S.C. § 1983

### Failure to Adequately Supervise

81. Lieutenant Medina failed to adequately supervise Officer Dillard and other officers on April 29, 2020. In this case, Lieutenant Medina had spoken directly to Officer Dillard before his second arrival at Miguel's home and was aware of the first interaction between the two. Thus, he was in a direct position to understand the issue of the citation and the reasonable actions and procedures to be taken when Officer Dillard arrived at Miguel's home the second time.

82. Lieutenant Medina was aware of the language barrier between the officers and Miguel, he was aware of Miguel's belief he was being harassed by the officers and was aware of Miguel's lack of understanding of the noise complaint. Based on information and belief, Lieutenant Medina showed deliberate indifference to the complexity of the issues unique to this specific noise complaint call. Lieutenant Medina did not care about the potential for escalation between Miguel and Officer Dillard. Instead, he chose to disregard the impending altercation.

83. Knowing all the factors involved in this noise complaint call, Lieutenant Medina deliberated the issue and knowingly disregarded the obvious consequence of Officer Dillard's actions. His decision was taken with deliberate indifference as to what would be the obvious consequence of his failure to supervise Officer Dillard and the other officers. The injuries to Miguel's family were a highly predictable consequence of his failure to properly supervise Officer Dillard.

84. This failure to supervise was a proximate and producing cause of Miguel and K.M.'s injuries.

## Count Four – 42 U.S.C. § 1983

## Equal Protection

85. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

86. In the manner described in this Complaint, Defendants violated Plaintiffs' Constitutional rights, intentionally subjecting them to unlawful, unequal treatment on the basis of their Cuban race, all in violation of the Fourteenth Amendment of the United States Constitution.

87. The Defendants' conduct created a discriminatory effect by targeting Plaintiffs, who are Cubans, and of Hispanic or Latino race, for police action that is based on race.

88. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, maliciously, recklessly and with willful indifference to Plaintiffs' Constitutional rights.

## VI.

## STATE LAW CLAIMS—

## BROUGHT UNDER SUPPLEMENTAL STATUTE, 28 U.S.C. §1367

### Count Five—Violations of the Texas Tort Claims Act Against County

89. Alternatively, pursuant to Texas Civil Practices and Remedies Code §101.021 et. Seq., Harris County is liable to Plaintiff Miguel for his injury to the head, as a result of the unlawful arrest by Officer Dillard's reckless conduct, caused by the misuse of tangible personal property belonging to Harris County while acting within the scope of his employment with Harris County.

90. Specifically, Officer Dillard was reckless and/or negligent in his use of his department-issued metal handcuffs used in the unlawful arrest of Miguel. Officer Dillard's negligent and/or reckless misuse of tangible personal property, as described herein, was the producing and proximate cause of Miguel's injuries. If Officer Dillard was a private person, he would be liable

to Plaintiff for his negligent use of his handcuffs against Miguel, and therefore, Harris County is liable for Officer Dillard's negligent use of his handcuffs pursuant to §101.021 et. seq. in *respondeat superior*.

## VII.
## DAMAGES

91. Both Plaintiffs have sustained serious, permanent damages as a result of the actions and/or omissions of Defendants described herein. Both Plaintiffs were diagnosed with mild traumatic brain injury, and Miguel had to be surgically intervened on his injured knee. Accordingly, Plaintiffs are entitled to an award of actual, compensatory damages and/or liquidated damages, including for the past and future. Plaintiffs seek an award of damages for their physical and mental anguish and pain and suffering which they both suffered, continue to suffer, and will suffer in the future. At this time, Plaintiffs believe their damages to be as follow:

Miguel Amador-Gonzalez - $1,000,000 or greater

K.M., the minor - $1,000,000 or greater

TOTAL COMPENSATORY DAMAGES: $2,000,000 or greater

## VIII.
## PUNITIVE DAMAGES

92. Plaintiffs would further show that the acts and omissions of the Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiffs. In order to punish the Defendants for engaging in unlawful discrimination and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery of punitive or exemplary damages.

IX.

ATTORNEYS FEES

93.     The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988(b), provides in relevant part, as follows: "In any action or proceeding to enforce a provision of sections [1981 & 1985], … the court, in its discretion, may allow the prevailing party, … a reasonable attorney's fee as part of the costs, …"

94.     Pursuant to Section 1988(b) the Court should determine that the Plaintiffs are a prevailing party and award them reasonable attorney's fees as part of the costs, at the end of this case.

X.

JURY DEMAND

95.     Plaintiffs demand a jury on all issues to be tried in this matter and herein.

XI.

PRAYER

FOR THE REASONS SET ABOVE, Plaintiffs respectfully request that this Court enter judgment in their favor and against all named Defendants, awarding compensatory and punitive damages and attorneys' fees; and provide any other relief this Court deems just and appropriate.

Respectfully submitted,

**THE GONZALEZ LAW GROUP, PLLC**

/s/ Kevin Acevedo
USDC Bar No. 2932922
The Gonzalez Law Group, PLLC
7151 Office City Drive, Ste. 200
Houston, Texas 77087
832-530-4070 Phone
832-530-4090 Fax
kevin@gonzalezlawgroup.net

**ATTORNEY FOR PLAINTIFFS**